UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                         :

PARK AVENUE ORAL AND FACIAL    :
SURGERY, P.C.,                                :
                                                          :
                       Plaintiff,     :           20-CV-5407 (VSB)
                                                          :
                  -against-        :         **OPINION & ORDER**
                                                          :
THE HARTFORD FINANCIAL SERVICES  :
GROUP d/b/a THE HARTFORD et al.    :
                                                          :
                    Defendants.  :
---------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __12/17/21__

Appearances:

Christopher Matthew Van de Kieft
Gitlin, Horn, and Van de Kieft LLP
New York, New York
*Counsel for Plaintiff*

Charles Anthony Michael
Steptoe & Johnson, LLP
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       This action, a dispute over insurance coverage, turns on whether Plaintiff, a dental

practice that closed its operations due to risk of contagion amid the COVID-19 pandemic, lost

business income due to "direct physical loss of or damage" to its premises.  The parties agree

that "direct physical loss of or damage" is the pivotal phrase in the insurance policy at issue.

Currently before me is Defendants' motion to dismiss.  Because the law is clear that COVID-19

does not cause "physical loss . . . or damage" to property, even if COVID-19 causes business

disruptions that lead to lost income, Defendants' motion to dismiss is GRANTED.

I.    **Factual Background**[1]

Plaintiff Park Avenue Oral and Facial Surgery, P.C. ("Plaintiff") is a New York

professional corporation that operates two dentists' offices on Park Avenue in New York City.

(Am. Compl. ¶ 15.)[2]  In December of 2019, Plaintiff purchased insurance coverage from

Defendant Sentinel Insurance Company, Limited ("Sentinel") for the period from February 12,

2020 through February 12, 2021, bearing the policy number 16 SBA PF7696 (the "Policy").  (*Id.*

¶ 26; Policy 1).[3]  The Policy covers various categories of potential losses under specific terms, as

stated in its various sections.  (*See, e.g.*, Policy 36 ("Special Property Coverage Form" stating

that "[v]arious provisions in this policy restrict coverage" and that the insurance buyer should

"[r]ead the entire policy carefully to determine rights, duties, and what is and is not covered.");

*id.* at 63 ("Business Liability Coverage Form" bearing a similar advisement about the specifics

of coverage)).  Among other things, the Policy states that Sentinel:

> will pay for the actual loss of Business Income you sustain due to the necessary
> suspension of your "operations" during the "period of restoration".  The suspension
> must be caused by direct physical loss of or physical damage to property at the
> "scheduled premises", including personal property in the open (or in a vehicle
> within 1,000 feet of the "scheduled premises", caused by or resulting from a
> Covered Cause of Loss.

---

[1] The following facts are taken from Plaintiff's pleadings and other documents properly before me at this stage of
the action.  I assume the factual allegations set forth in Plaintiff's pleadings to be true for purposes of this motion.
*See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *see also Chambers v. Time Warner,
Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (A complaint is "deemed to include any written instrument attached to it as an
exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated
by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect,
which renders the document integral to the complaint." (internal quotations and citations omitted)); *see* Fed. R. Civ.
P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").
My references to these facts should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to the Amended Complaint filed in this action.  (Doc. 9.)

[3] "Policy" refers to insurance contract bearing the policy number 16 SBA PF7696 between Plaintiff and Sentinel,
which was filed with the Court.  (Doc. 15-1).  The page numbers used herein correspond to the Bates stamps—
"SENT [#]"—appearing at the bottom of the pages of the Policy as filed.  *E.g.*, "Policy 1" refers to the page bearing
the number SENT00001.

(*Id.* at 45.)  "Covered Causes of Loss" is defined to mean "RISKS OF DIRECT PHYSICAL

LOSS" absent certain exceptions.  (*Id.* at 37.)  "Business Income" is defined in the Policy as

"Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if

no direct physical loss or physical damage had occurred; and" as "Continuing normal operating

expenses incurred, including payroll."  (*Id.* at 45.)   A further provision offers coverage if the

Plaintiff loses "Business Income . . . when access to your 'scheduled premises' is specifically

prohibited by order of a civil authority as the direct result of a Covered Cause of Loss . . . ."  (*Id.*

at 46.)

　　　After the City and State of New York began issuing executive orders in March of 2020

relating to the COVID-19 pandemic, during the week of March 16, 2020, Plaintiff closed its

practice as to all but "a small amount of emergency procedures."  (*See* Am. Compl. ¶ 70.)  As is

now engrained in all of our minds, COVID-19 is a highly contagious disease, and the presence of

virus particles that cause COVID-19 renders physical premises unsafe to the extent that people

are in close proximity to each other within said premises.  (*See id.* ¶ 78.)  This is particularly true

for dental practices like those Plaintiff operates—dental procedures like teeth cleaning and cavity

drilling tend to cause saliva and other respiratory particles to become aerosolized, and those

particles can spread the novel coronavirus that causes COVID-19.  (*See id.* ¶¶ 71–72.)

Moreover, the novel coronavirus particles can remain active for days after finding their way onto

physical property and premises, including Plaintiff's dental instruments and offices.  (*See id.* ¶¶

77–79.)[4]  After the Governor of the State of New York issued an executive order dated March 7,

---

[4] Specifically, Plaintiff pleads that "[t]he presence of any COVID-19 particles renders items of physical property unsafe and the premises unsafe."  (Am. Compl. ¶ 78.)  While the actual truth of this allegation is not relevant to my disposition on this motion, *see supra* note 1, the Centers for Disease Control and Prevention state that although "[i]t is possible for people to be infected through contact with contaminated surfaces or objects . . . the risk is generally

2020, "[t]wo of the dental professionals in Plaintiff's practice were infected with COVID-19." (*Id.* ¶ 89.)[5]

Thus, as a result of the COVID-19 pandemic, Plaintiff did not earn as much business income as it would have otherwise.  (*See id.* ¶ 95–97.)  Plaintiff sought payment under the Policy for this diminution of income as lost business income, among other things, under the Policy, but Defendants denied coverage.  (*See, e.g.*, *id.* ¶¶ 107, 114, 121.)

## II.   **Procedural History**

Plaintiff filed this action on July 14, 2020 against Sentinel, as well as against its parent company, Defendant The Hartford Financial Services Group, Inc. ("HFSG"), and against a separate HFSG subsidiary, Defendant Hartford Underwriters Insurance Co. ("HUIC," and together with Sentinel and HFSG, "Defendants").  (Doc. 1 ¶¶ 9–11.)  On November 9, 2020, Plaintiff filed its Amended Complaint.  (Doc. 9.)  The Amended Complaint asserts claims for breach of contract as a result of Defendants' alleged failure to provide insurance coverage within the meaning of the Policy, as well as claims for declaratory judgment regarding the meaning of the Policy.  (*See id.* ¶¶ 101–49.)

On November 23, 2020, Defendants filed a motion to dismiss the Amended Complaint, a memorandum of law, and a declaration in support of their motion.  (Docs. 13–15.)  On December 21, 2020, Plaintiff filed a memorandum of law and a declaration in opposition to Defendants' motion.  (Docs. 18–19.)  On January 13, 201, Defendant filed their reply memorandum.  (Doc. 20.)

_____

considered to be low."  Science Brief: SARS-CoV-2 and Surface (Fomite) Transmission for Indoor Community Environments, https://www.cdc.gov/coronavirus/2019-ncov/more/science-and-research/surface-transmission.html (updated Apr. 5, 2021).

[5] Plaintiff does not specify when these infections occurred.

### III.   <u>Legal Standard</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations:  the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted).  A court "may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Finally, although all

5

allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

## IV.   <u>Discussion</u>

As mentioned, Plaintiff's case turns on whether the closure of its dental practice due to the contagion risk of the COVID-19 pandemic, and any losses of business income or increased expenditures associated with those closures, constituted losses "caused by direct physical loss of or physical damage to property" at premises within in the meaning of the Policy.[6]  The parties agree that their dispute turns on principles of New York contract interpretation.  (*See* MTD Br. 7 n.4; MTD Opp. 14 n.14 ("Defendants state that New York law governs.  Plaintiff does not dispute this.").)[7]

### A.   *Applicable Law*

Under New York law, a plaintiff claiming a breach of contract must allege:  "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)).  A court's primary objective in interpreting a contract "is to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000); *see also Greenwich Capital Fin. Prods., Inc. v. Negrin*, 74 A.D.3d 413, 415 (1st Dep't 2010) (courts are bound to construe the terms of a contract "in a manner that accords the

---

[6] The Policy covers "direct physical loss of or physical damage to Covered Property at the premises described" in addenda to the Policy.  (*See* Policy 36.)  The parties do not dispute to which premises the Policy applies.

[7] "MTD Br." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss.  (Doc. 14.)  "MTD Opp." refers to Plaintiff's Opposition to Defendants' Motion to Dismiss.  (Doc. 18.)

words their fair and reasonable meaning, and achieves a practical interpretation of the

expressions of the parties" (internal quotation marks omitted)).

A district court may dismiss a breach of contract claim at the motion-to-dismiss stage

only where "the terms of the contract are unambiguous." *Orchard Hill*, 830 F.3d at 156. A

contract is ambiguous "if its terms could suggest more than one meaning when viewed

objectively by a reasonably intelligent person who has examined the context of the entire

integrated agreement and who is cognizant of the customs, practices, usages and terminology as

generally understood in the particular trade or business." *Chesapeake Energy Corp. v. Bank of*

*N.Y. Mellon Tr. Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (internal quotation marks omitted). There

is no ambiguity "where the contract language has a definite and precise meaning." *Id.*

### B.    *Application*

As an initial matter, I find that the phrase "direct physical loss of or physical damage to

property" is plain and unambiguous, and as such I may not consider extraneous materials that

may color its meaning. In applying New York law to insurance contracts, courts have found that

the exact phrase "direct physical loss of or physical damage to property," as well as phrases

nearly identical to it, to be unambiguous. *See Deer Mountain Inn LLC v. Union Ins. Co.*, 1:20-

cv-0984 (BKS/DJS), 2021 WL 2076218, at *6–10 (N.D.N.Y. May 24, 2021) (finding "direct

physical loss of or damage to property" unambiguous and collecting cases); *see also, e.g.*, *Chefs'*

*Warehouse, Inc. v. Emps. Ins. Co. of Wausau*, 20 Civ. 4825 (KPF), 2021 WL 4198147, at *7

(S.D.N.Y. Sept. 15, 2021) ("Courts both in and out of this District that have applied New York

law to interpret the phrase 'direct physical loss or damage,' or nearly identical contractual

language, have overwhelmingly held that the phrase's plain meaning does not extend to the loss

of a property's intended use due to the COVID-19 pandemic or related legal restrictions.");

*Broadway 104, LLC v. XL Ins. Am., Inc.*, 20-cv-3813 (PKC), 2021 WL 2581240, at *3 (S.D.N.Y.

June 23, 2021) ("The phrase 'direct physical loss' describes tangible loss and cannot reasonably be read to encompass a regulatory restriction against certain uses.").

Because of this, I do not consider Plaintiff's arguments about how "numerous legislative and executive bodies have issued fact-based determinations" regarding whether "COVID-19 results in direct physical loss or damage," (MTD Opp. 20), nor do I consider a supposed insurance industry practice of inserting clarifying language into policies about "[d]isease-causing agents" and how that may impact the reading of the Policy, (*id.* at 6). Indeed, Plaintiff never actually argues that the Policy is ambiguous, so it is unclear why Plaintiff offers citations to extraneous evidence as to the Policy's meaning. *See DeMoura v. Cont'l Cas. Co.*, 523 F. Supp. 3d 314, 320 (E.D.N.Y. 2021) (under New York law, it is only where "the language of [a] policy is susceptible of two reasonable meanings" that "the parties may submit extrinsic evidence" to vary the meaning of that language (quoting *Newin Corp. v. Hartford Acc. & Indem. Co.*, 62 N.Y.2d 916, 919 (1984))). Accordingly, regardless of whatever wisdom may undergird the sources Plaintiff cites, I cannot consider them in construing the Policy.

In the wake of the COVID-19 pandemic, there is a groundswell of caselaw applying New York law to determine whether phrases like "physical loss or damage" in insurance policies cover "the loss of a property's intended use due to the COVID-19 pandemic or related legal restrictions." *See Chefs' Warehouse*, 2021 WL 4198147, at *7 (collecting cases). "New York law is clear" that "business interruption" insurance for physical loss or damage requires "some damage to the property to prohibit you from going" to and utilizing the property, and thus that COVID-19 does not qualify to trigger coverage. Tr. of Order to Show Cause H'ring at 15:12-14, *Social Life Magazine, Inc. v. Sentinel Ins. Co*, No. 20 Civ. 3311(VEC), 2020 WL 2904834 (S.D.N.Y. May 14, 2020); *see also 10012 Holdings, Inc. v. Sentinel Ins. Co.*, 507 F. Supp. 3d

482, 487 (S.D.N.Y. 2020) (COVID-19 not alleged to have "physically damaged Plaintiff's property, regardless of how the public health response to the virus may have affected business conditions").  These cases follow from well-established law, as "New York courts have consistently understood identically worded insurance clauses to exclude business interruption losses from coverage when the losses were not caused by real, tangible damage to or loss of the property."  *DeMoura*, 523 F. Supp. 3d at 321 (collecting cases); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure."  (collecting cases)).

There is no reason not to apply this interpretation in this case, because Plaintiff has not alleged facts tending to show that COVID-19 has led to "direct physical loss of or physical damage to property" used in its business.  Similar phrases like "direct physical loss or harm . . . exclude mere loss of use;" *i.e.*, insurance coverage containing that phrase does not apply where the property is not physically lost or damaged but is rendered unusable for some other reason. *Chefs' Warehouse*, 2021 WL 4198147, at *8 (internal quotation marks omitted); *see also Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, 524 F. Supp. 3d 242, 247 (S.D.N.Y. 2021) ("[C]ourts applying New York law have consistently concluded that loss of use of an insured's premises does not trigger Business Income coverage when the policy provides that such coverage requires evidence of physical damage or physical loss."); *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 133 (2d Cir. 2006) (upholding the denial of business interruption coverage to a commercial airline that claimed lost earnings as a result of a

government mandated shutdown of air service following the September 11 terrorist attacks because such coverage required evidence of physical damage to the airline's property).

The factual allegations in this case demonstrate that Plaintiff only alleges a loss of use of business facilities as a result of a public health response to COVID-19.  Plaintiff does not allege that its dental offices or dentistry instruments were physically lost or physically damaged; it alleges that "property located at [its] premises" has been rendered "unsafe."  (Am. Compl. ¶¶ 87.)  In other words, Plaintiff pleads that it closed its dentistry practices as part of a public health response, which is a "reason[] exogenous" to any physical damage to premises or property, and from which "adverse business consequences . . . flow[ed]" due to Plaintiff's closure of its offices.  *Newman Myers*, 17 F. Supp. 3d at 331.  As in other cases, "[n]othing in the [operative] [c]omplaint plausibly supports an inference that COVID-19" or the subsequent government public health ordinances "physically damaged Plaintiff's property, regardless of how the public health response to the virus may have affected business conditions for Plaintiff."  *10012 Holdings*, 507 F. Supp. 3d at 487.

This reality—that COVID-19 virus particles do not cause "direct physical loss of or physical damage" within the meaning of the Policy—dooms Plaintiff's case.  Each of Plaintiff's arguments stem from its premise that "[t]he presence (and even the threat) of COVID-19 constitutes direct physical loss or damage to property."  (MTD Opp. 16–25.) As explained above, this argument is not supported by and cannot be squared with the plain language of the Policy and applicable law.

V.      **Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of

Court is respectfully requested to close the open motion at docket number 13 and to terminate

this action.

SO ORDERED.

Dated:  December 17, 2021
        New York, New York

Vernon S. Broderick
United States District Judge